### HAMLIN vs. SPAULDING.

(1, 2.) *Vindictive damages against officer for false arrest, etc.* (3, 4.) *Reversal for erroneous instructions.*

1. *Vindictive* damages for an illegal arrest and false imprisonment should be allowed against a peace officer only where the arrest was made in bad faith, with a view to some other object than the administration of criminal justice.
2. An instruction in such a case that if defendant had *no good reason* for believing that plaintiff committed the crime for which he was arrested, the jury might give vindictive damages, was erroneous.
3. Judgment will not be reversed for an erroneous instruction, if it is clear that the verdict could not have been different under proper instructions.
4. But where the bill of exceptions does not contain all the evidence, and there was error in the instructions, the judgment must be reversed.

ERROR to the Circuit Court for *Winnebago* County. On the 7th of February, 1867, in the city of Osh-kosh, one Kingsley requested *Spaulding* to go with him to the stable of one Fulton and assist him in

taking therefrom and leading away to his (Kingsley's) barn two horses upon which he held a chattel mortgage. The horses had been in Kingsley's possession under the mortgage a short time before, and had been taken out of his possession on the 3d or 4th of February, by *Hamlin,* under the direction of another person (who claimed under another chattel mortgage), and had been left at Fulton's stable. *Spaulding* accompanied Kingsley to said stable, and they took the horses therefrom by a back door and through a back yard, *Spaulding* having taken down a bridle or headstall belonging to the stable (and which Kingsley did not claim to own), and put it upon the horse which he led. After the horses were put in his barn, Kingsley went back to Fulton's stable and returned the bridle. This occurred between seven and eight o'clock A. M. An employee about the stable saw the horses in the possession of Kingsley and *Spaulding* after they were taken outside, and endeavored unsuccessfully to take them from their possession. Fulton went to the residence of *Hamlin,* who was a constable, and asked his aid in recovering the property, etc. *Hamlin* went with him, arrested Kingsley upon the street, and *Spaulding* at Kingsley's stable, and committed them both to jail, while Fulton took possession of the horses. *Spaulding* was confined for less than an hour, and was then permitted to depart, no warrant having been procured for his arrest. He afterwards brought the action below against *Hamlin* for a wrongful arrest and imprisonment.

In his own behalf *Hamlin* testified: "Fulton came to me that morning, and said he had a couple of horses taken from his stable, and a bridle stolen, and wanted me to aid him in looking up and arresting the man, and recovering his property. I started to see Choate [who also claimed to hold a mortgage of the horses]; came back in sight of Fulton's stable; he had hold of

a man that he said was one of the men who took the horses [Kingsley]; he put the man in my cutter, and he was taken down to jail. We then went to where we supposed the horses were. [It seems that Fulton arrived first at Kingsley's barn.] When I first saw plaintiff, he and Fulton had hold of each other. Fulton said he had better be taken down to jail; told me to take him and he would take care of horses; they were in the barn; plaintiff was trying to get the door to; I took plaintiff to jail." *Question:* "Why did you not get a warrant?" *Answer:* I went to Fulton; saw first man I put in jail [Kingsley] going up street; told Fulton to get a warrant; he declined doing so; said he might be thought to be acting harshly; the arrest was made between seven and eight o'clock A. M.; made it upon the representations of Fulton; no justice of the peace was in his office at that time; their offices were not open until nine o'clock." Mr. Fulton for the defense, testified: " I went over to *Hamlin's*, told him somebody had stolen the horses and taken one of my bridles; met Kingsley on the street and took him to jail. We went up to Kingsley's barn and saw the plaintiff; he tried to shut the door and lock the barn. I caught him and prevented his locking the barn, and *Hamlin* took him off."

The court instructed the jury, among other things, as follows: " The defendant was justified in making the arrest without warrant, if the plaintiff had committed the crime of larceny, or if the defendant had good cause to believe that such was the fact. There is no proof that any felony had been committed, though there is some tending to show that defendant was so informed. If he acted in good faith upon the information of Mr. Fulton or others, and had reason to rely upon the truth of their statement, he is not liable in this action, though such information would not protect him if he had reason, from other sources,

to believe that their statements were untrue, and their apprehensions groundless. It is only in case you find from the testimony that the defendant had no good reason to believe that the plaintiff had committed the crime of larceny, or some offense for which he might lawfully be taken into custody, that he is liable in this action. If you find such to be the fact, you will give the plaintiff such actual damages as he may have sustained in consequence of his arrest and detention; and you are also at liberty to give him such vindictive or punitory damages as you may think proper under all the circumstances of the case, not exceeding the amount claimed in the complaint. As there is no proof of any actual damage, you can, in case you find for plaintiff, give him nominal damages only, unless you think from the testimony some further sum should be given by way of example or punishment."

Verdict for plaintiff for $100. New trial denied, and judgment rendered on the verdict; which *Hamlin* seeks to reverse for error.

*James Freeman* and *Moses Hooper*, for plaintiff in error.

*Gabe Bouck*, for defendant in error.

The decision in this cause was announced at the June term, 1869.

PAINE, J. As a general proposition, the instruction of the court below on the subject of vindictive damages was erroneous. The action being for an illegal arrest and false imprisonment, the defendant attempted to justify as constable, acting on a charge and suspicion of felony in making the arrest. The court told the jury that if the defendant had no good reason to believe that the plaintiff had committed the crime of larceny, they might give vindictive damages. This is too severe a rule. It might be possible for an officer to believe in fact that a person was guilty,

without a good reason. Officers called on to arrest without warrant are frequently obliged to judge hastily from appearances, or the information of strangers, and one might in good faith form a belief of guilt upon grounds which a jury, having an opportunity to judge of the whole facts with greater deliberation, might think insufficient. In such a case, although he might be liable for actual damages, he ought not to be punished by vindictive damages. To justify these, the arrest should be made in bad faith, and, if not with actual malice, at least for the purpose of serving some ulterior object outside of the administration of criminal justice.

If the bill of exceptions in this case purported to contain all the evidence, perhaps we should affirm the judgment upon the ground that the verdict was right upon the evidence, and that the instruction, although inaccurate as applicable generally to such actions, was sufficiently accurate upon the facts shown here. For if this was all the evidence, it would be pretty clear, if the defendant had no good reason to believe the plaintiff guilty, that he did not in fact believe it, and that he was using his official position to enable him to regain possession of the horses, under the chattel mortgage, by arresting the persons who had them in charge, and who had retaken them as he had every reason to believe, under a claim of title.

But as we cannot say that the evidence in the bill is all that was offered, and as the instruction was inaccurate as a general proposition, the judgment must be reversed, and the cause remanded for a new trial.

*By the Court.*—So ordered.